**Christopher Lundberg,** OSB No. 941084
Email:  clundberg@hk-law.com
**Matthew E. Malmsheimer,** OSB No. 033847
Email: mmalmsheimer@hk-law.com
**HAGLUND KELLEY LLP**
2177 S.W. Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Eugene Division)

| | |
|---|---|
| **JEFFERSON LOA, M.D.**, an individual,<br><br>         Plaintiff,<br>    v.<br><br>**SALEM HEALTH HOSPITALS & CLINICS**, an Oregon nonprofit corporation, and **SALEM HEALTH**, an Oregon nonprofit corporation,<br><br>         Defendants. | Case No.: 6:22-cv-01777-AA<br><br>**FIRST AMENDED COMPLAINT FOR UNLAWFUL RETALIATION**<br><br>Violation of False Claims Act, 31 U.S.C. § 3730(h); ORS 659A.199; ORS 659A.203<br><br>DEMAND FOR JURY TRIAL |

With the written consent of Defendant Salem Health Hospitals & Clinics, Plaintiff Jefferson Loa, M.D., files this First Amended Complaint adding Salem Health as a defendant and alleging the following:

**JURISDICTION**

1.

This Court has original jurisdiction over Plaintiff's federal statutory claims under

Page 1 – **FIRST AMENDED COMPLAINT**

28 U.S.C. § 1331 and 31 U.S.C. § 3732. This Court has supplemental jurisdiction over Plaintiff's pendant state claims under 28 U.S.C. § 1367.

## VENUE

2.

Venue is proper in the District of Oregon, Eugene Division, because the Defendant resides within the State of Oregon and all of the events giving rise to the claims occurred in Marion County in the State of Oregon. 28 U.S.C. § l391(b).

## PARTIES

3.

Plaintiff Jefferson Loa, M.D., is a Filipino-American individual who resides in Marion County, Oregon. Dr. Loa was formerly employed by Defendant as a Hospitalist and its Assistant Medical Director.

4.

Defendant Salem Health Hospitals & Clinics ("Salem Health Hospitals") is an Oregon nonprofit corporation with its primary place of business in Salem, Oregon. At all times material, Salem Health acted by and through its agents and employees, who were acting in the course and scope of their employment and in furtherance of Defendant's interests.

5.

Defendant Salem Health is an Oregon nonprofit corporation with its primary place of business in Salem, Oregon. At all times material, Salem Health acted by and through its agents

and employees, who were acting in the course and scope of their employment and in furtherance of Defendant's interests.

## ADMINISTRATIVE EXHAUSTION

6.

Dr. Loa notified Salem Health of his intent to file a civil action for vindication of his rights on or about June 8, 2022.

7.

Dr. Loa filed a Complaint with the Oregon Bureau of Labor and Industries ("BOLI") Civil Rights Division on or about April 5, 2021.

8.

On or about March 30, 2022, BOLI issued Dr. Loa a notice of right-to-sue.  Dr. Loa received that notice of right-to-sue on April 2, 2022.

9.

Dr. Loa and Salem Health entered into a series of tolling agreements to allow them to engage in pre-filing negotiations and mediation.  Those tolling agreements extend Dr. Loa's deadline to file a civil action based on the matters contained in his BOLI Complaint to November 25, 2022.  Dr. Loa has filed this civil action within the time required by the Parties' tolling agreements.

///

## FACTS

10.

Dr. Loa was originally hired by Salem Health as a Hospitalist on or about February 11, 2016.  Dr. Loa started working for Salem Health on or about July 11, 2016.  He rose quickly and was promoted to Assistant Medical Director later that year.

11.

Dr. Loa was highly regarded by his colleagues and patients alike.  He received numerous accolades, including being nominated for the Star award for exemplary service above and beyond his standard job duties.  He regularly received highly positive reviews and was recognized for his ability to foster positive relations with his colleagues.

12.

In Dr. Loa's performance review dated June 13, 2019, Salem Health's then-Medical Director noted that Dr. Loa had "excelled as a respected provider and leader within the group and the hospital."  The reviewer further noted that peer reviews "consistently note that he is approachable, helpful and wise."  In his overall comments, the reviewer stated that Dr. Loa "is greatly appreciated for his positive engagement and contributions to the team."  The reviewer reported that Dr. Loa had no areas that needed improvement.

13.

In Dr. Loa's performance review dated June 11, 2020, Salem Health's then-Medical Director again praised Dr. Loa's performance, noting that Dr. Loa had "done an excellent job

creating relationships at West Valley [Hospital]" and that Dr. Loa "approaches process issues constructively." The reviewer further noted in his overall comments that Dr. Loa "is a valuable leader for the organization who will continue to positively influence the organization with continued leadership mentoring." The reviewer again reported that Dr. Loa had no areas that needed improvement.

14.

Dr. Loa's ability to skillfully manage his medical team and to engender the trust and esteem of his colleagues and patients was most keenly felt by Salem Health's nursing staff. As one of the nurses who worked on his team put it, Dr. Loa insisted on maintaining "an environment that promotes safe, evidence-based practice and high standards of care and interprofessional collaboration," and he was able to do so in a "manner that fosters continued collaboration."

15.

Dr. Loa's upward career trajectory at Salem Health continued through 2018, when he was invited to serve as interim Medical Director, a role he filled for approximately four months.

16.

However, in the summer of 2019, all of that changed. That summer, Dr. Loa began to learn from his nursing staff about practices by some of Salem Health's physicians that Dr. Loa found extremely troubling.

///

Page 5 – **FIRST AMENDED COMPLAINT**

17.

Dr. Loa learned that one or more of Salem Health's physicians were engaged in a practice known amongst the nursing staff as "fly-by rounding," where the physicians would barely look in on a patient during their round, but then chart and bill for a complete checkup and procedures that were never conducted.

18.

Dr. Loa also learned that one or more physicians were not responding to nurses' pages when their patients needed a physician's attention and that certain physicians were required to be on duty for extended hours, sometimes with shifts as long as 24-48 hours.

19.

These practices were extremely troubling to Dr. Loa. First and foremost, they compromised patient care and patient outcomes. In addition, Dr. Loa was also disturbed by the fraudulent billing that was occurring in connection with the "fly by rounding."

20.

Dr. Loa reported the issue to Salem Health's then-Medical Director. However, the Medical Director did nothing to address the issue or even respond to Dr. Loa's report.

21.

Given this lack of response, Dr. Loa elevated his reports to Salem Health's Corporate Integrity Department. While Dr. Loa learned that Corporate Integrity investigated his reports, he was unaware of any action it took to correct the situation.

22.

While Salem Health took no apparent action to correct this practice, it almost immediately started retaliating against Dr. Loa.  He was excluded from major decisions that he would ordinarily have been involved in as the Associate Medical Director.  He was also removed from answering Patient Safety Alerts where he reviewed the circumstances surrounding negative patient outcomes and, if necessary, designating those cases for further peer review.

23.

Dr. Loa also found himself excluded from regular management meetings that he had previously been involved in.  His colleagues became noticeably cool and distant from him, leaving when he entered a room and excluding him from social events that he had previously participated in.

24.

This retaliation continued to escalate.  Dr. Loa overheard physicians bragging about their weight-loss regimens that included extreme fasting where the physician would not eat for 24-48 hours, while still seeing patients.

25.

On or about September 17, 2020, Dr. Loa was in a meeting discussing patient safety. During that meeting, he mentioned his concerns that the extreme fasting weight-loss technique could have a negative impact on patient care.

///

26.

Some of Dr. Loa's colleagues reportedly took offense at this comment, claiming that it was a slight against their practices during Ramadan. Dr. Loa believed that their complaints were a pretext.

27.

Shortly thereafter, Dr. Loa was brought into a meeting with the Medical Director and Program Manager in which they accused Dr. Loa of being racist. This was very troubling to Dr. Loa because it simply wasn't true. Dr. Loa was only raising the issue out of concern for patient care based on the physicians' self-reported weight-loss regime, not a religious practice related to Ramadan or any other religious practice.

28.

The accusation was also troubling because he believed that the Medical Director and Program Manager knew him well enough to know that he was not anti-Muslim. Their insistence that he write a letter of apology appeared to Dr. Loa to be an effort to humiliate him and further marginalize him from his colleagues.

29.

Nonetheless, if anyone had been genuinely offended by Dr. Loa's concern, he wanted to be clear about his intent and his true feelings. Accordingly, on September 18, 2020, he sent an apology to the entire hospitalist staff in which he stated:

> Colleagues, I want to apologize for and clarify the comment I made yesterday during lunch and learn during our discussion about patient safety in relation to the

number of consecutive shifts one undertakes. My intention when I made the comment about providers allegedly practicing prolonged intermittent fasting ("fasting for 24 hours") was to show that there were other factors that may affect patient safety other than the number of consecutive shifts a provider works. My comment was in no way shape or form intended to criticize any religion or providers who fast for religious practices. In hindsight, I should have used a different example to illustrate my point.

I sincerely apologize if my comment offended anyone. Those who know[] me well know that I respect people of all races, religion, and sexual orientation.

Please reach out if you have any questions.

Jeff Loa.

30.

Subsequently, in January 2021, Dr. Loa was asked to step down from his role as Assistant Medical Director. The reason given for the demotion was that Dr. Loa had lost the confidence of his colleagues due to the concern he had raised about the impact of extreme fasting on patient safety.

31.

Dr. Loa reluctantly acceded to Salem Health's pressure and accepted the demotion back to his role as a physician hospitalist. However, he understood this was further retaliation for his raising patient care concerns.

32.

On or about April 25, 2021, having seen no progress on his reports of the "fly-by rounding," he reported his patient-care concerns to the federal Office of Inspector General. He also reported the retaliation he was suffering in a civil rights complaint to the Bureau of Labor

and Industries.

33.

In a letter dated February 22, 2022, Salem Health terminated Dr. Loa's employment without explanation or reason, more than a year before his employment contract was to expire.

34.

As a result of Salem Health's retaliation against Dr. Loa described above, he has suffered economic damages in the form of lost earnings and benefits in an amount to be specifically proven at trial, but currently estimated to be $501,227. In addition, Dr. Loa has suffered non-economic damages in the amount of $1.5 million.

35.

Dr. Loa has mitigated his damages.

## CLAIMS FOR RELIEF
### First Claim for Relief
### (Violation of False Claims Act, 31 U.S.C. § 3730(h) – Employment Retaliation)

36.

Plaintiff Dr. Jefferson Loa realleges the allegations set forth above, and in addition alleges the following.

37.

As set forth above, Dr. Loa engaged in protected activity by reporting information that he reasonably believed in good faith to be evidence of fraudulent billing practices and took other efforts to stop those practices.

38.

As set forth above, Defendants were aware of Dr. Loa's protected activity and retaliated against him on account of that protected activity by eliminating job responsibilities, demoting him from the Assistant Medical Director position and ultimately terminating his employment.

39.

Defendants' retaliation would dissuade a reasonable person in Dr. Loa's circumstances from engaging in protected activity.

40.

Dr. Loa has suffered economic damages in an amount to be specifically proven at trial, but currently estimated to be $501,227, when doubled under 31 U.S.C. § 3730(h)(2) amounts to $1,002,454. In addition, Dr. Loa has suffered non-economic damages in the amount of $1.5 million.

41.

Dr. Loa is entitled to recover his reasonable attorney fees under 31 U.S.C. §3730(h)(2).

**Second Claim for Relief**
**(Violation of ORS 659A.199)**

42.

Plaintiff Dr. Jefferson Loa realleges the allegations set forth above, and in addition alleges the following.

43.

As set forth above, Dr. Loa engaged in protected activity by reporting information that he

reasonably believed in good faith to be evidence of a violation of federal and/or state laws prohibiting fraudulent billing practices.

44.

As set forth above, Defendants were aware of Dr. Loa's protected activity and retaliated against him on account of that protected activity by eliminating job responsibilities, demoting him from the Assistant Medical Director position and ultimately terminating his employment.

45.

Defendant's retaliation would dissuade a reasonable person in Dr. Loa's circumstances from engaging in protected activity.

46.

Dr. Loa has suffered economic damages in an amount to be specifically proven at trial, but currently estimated to be $501,227. In addition, Dr. Loa has suffered non-economic damages in the amount of $1.5 million.

47.

Dr. Loa is entitled to his reasonable attorney fees under ORS 659A.885.

48.

Dr. Loa intends to amend his Complaint to seek punitive damages in an amount to be determined by the jury.

///

///

## Third Claim for Relief
### (Violation of ORS 659A.203)

49.

Plaintiff Dr. Jefferson Loa realleges the allegations set forth above, and in addition alleges the following.

50.

As set forth above, Dr. Loa engaged in protected activity by reporting evidence that he reasonably believed in good faith constituted a violation of federal and/or state law, rules or regulations prohibiting falsification of patient charts and billing and that constituted a substantial and specific danger to public health by the practice known as "fly-by rounding."

51.

As set forth above, Defendants were aware of Dr Loa's protected activities and retaliated against him on account of those protected activities by forcing him from his position as Assistant Medical Director and ultimately terminating his employment.

52.

As a result of this retaliation, Dr. Loa has suffered economic damages in an amount to be specifically proven at trial, but currently estimated to be $501,227. In addition, Dr. Loa has suffered non-economic damages in the amount of $1.5 million.

53.

Dr. Loa is entitled to his reasonable attorney fees under ORS 659A.885.

///

54.

Dr. Loa intends to amend his Complaint to seek punitive damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jefferson Loa prays for relief as follows:

1. For judgment in his favor;

2. For an award of compensatory damages of $2,502,454;

2. For his reasonable attorney fees;

3. For his reasonable costs incurred herein; and

4. For such other relief as the Court deems just and proper.

DATED this 20th day of January, 2023.

**HAGLUND KELLEY LLP**

*s/ Christopher Lundberg*
Christopher Lundberg, OSB No. 941084
Matthew E. Malmsheimer, OSB 033847
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2023, I served a true copy of the foregoing **FIRST AMENDED COMPLAINT FOR UNLAWFUL RETALIATION,** on the following:

Maryann Yelnosky
Ryan Gibson
Francis T. Barnwell
Arbor Employment Law
200 SW Market Street, Suite 900
Portland, OR 97201

Attorneys for Defendant

by the following indicated method(s):

☐   by **mailing** a full, true and correct copy thereof in a sealed first-class postage prepaid envelope, addressed to the foregoing attorney at the last known office address of the attorney, and deposited with the United States Post Office at Portland, Oregon on the date set forth above.

☐   by causing a full, true and correct copy thereof to be **hand delivered** to the attorney at the last known address listed above on the date set forth above.

☐   by sending a full, true and correct copy thereof via **overnight mail** in a sealed, prepaid envelope, addressed to the attorney as shown above on the date set forth above.

☐   by **faxing** a full, true and correct copy thereof to the attorney at the fax number shown above, which is the last-known fax number for the attorney's office on the date set forth above.

☒   by transmitting full, true and correct copies thereof to the attorneys through the court's Cm/ECF system on the date set forth above.

                                                           *s/ Matthew E. Malmsheimer*
                                                           Christopher Lundberg, OSB No. 941084
                                                           Matthew E. Malmsheimer, OSB No. 033847
                                                           Attorneys for Plaintiff